IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| TRENTON COCKRELL | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Case Number  6:21-CV-802 |
| | § | |
| BNSF RAILWAY COMPANY | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THIS HONORABLE JUDGE OF SAID COURT:

Comes now Plaintiff, Trenton Cockrell, complaining of Defendant BNSF Railway Company and would show this Honorable Court the following:

### I. PARTIES

1.     Plaintiff is Trenton "Trent" Cockrell who was at all material times employed by BNSF Railway Company. Trent Cockrell resides at 153 Western Ridge Road, Gatesville, Texas 76528.

2.     Defendant, BNSF Railway Company, is a corporation doing business in the State of Texas and is subject to personal jurisdiction in the Western District of Texas, Waco Division in that it has regular and systematic contacts within this District. Service of process may be had upon Defendant, BNSF RAILWAY COMPANY, by serving its agent, CT Corporation System, 1999 Bryan, Suite 900, Dallas, Texas 75201.

### II. JURISDICTION AND VENUE

3.     Plaintiff's rights and remedies against Defendant arise under the Federal Railroad Safety Act (FRSA), 49 U.S.C. §20109, and the Court has jurisdiction to hear this matter pursuant thereto.

1

4.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 on the basis that the suit arises out of a federal question.

5.      Venue is proper in this action pursuant to the terms of 28 U.S.C. §1391 in that all or a substantial portion of the events made the basis of this action occurred in the Western District of Texas, Waco Division and Defendant resides in and has regular and systematic contacts in the Western District of Texas, Waco Division.

## III. PROCEDURAL BACKGROUND

6.      The subject of this action was a complaint filed with the Secretary of Labor, pursuant to 49 U.S.C. §20109(c)(2) on June 30, 2020.

7.      On March 2, 2021, the Secretary of Labor issued the Secretary's "Findings and Preliminary Order" determining that Defendant violated the FRSA, reinstated Plaintiff to his former position, and awarded Plaintiff almost $300,000 in damages for back wages, compensatory damages, punitive damages and attorney's fees.

8.      On March 9, 2021, Defendant appealed the Secretary of Labor's findings in OALJ Case No. 2021-FRS-00030, which is scheduled for a hearing on October 26, 2021.

9.      The parties have not taken any depositions, nor are any dispositive motions pending in OALJ Case No. 2021-FRS-00030.

10.     This action is now brought before this Court as an original action in accordance with 49 U.S.C. §20109(d)(3), the criteria of the provision having been satisfied in that:

a.      More than 210 days have passed since the filing of Plaintiff's complaint with the Secretary of Labor;

b.      The fact that more than 210 days have passed since the filing of his complaint is not the result of bad faith of Plaintiff; and

c.      The Secretary of Labor has not issued a final decision.

IV. BACKGROUND

11.      On August 9, 2019, Defendant arranged for Hallcon Corporation, a railroad crew transportation company, to transport Defendant's employees Olen Ware, Xavier Byers, Robert Johnson and Trent Cockrell to a train. While being transported in Houston, Harris County, Texas, the Hallcon van occupied by Ware, Byers, Johnson and Cockrell was struck from behind, resulting in injuries to Ware, Byers, Johnson and Cockrell. All total, 9 people were injured in the crash. Below is the Texas Peace Officer's Report detailing the events of the crash:



12.      Below is a copy of the Texas Peace Officer's Report showing that Ware, Byers, Johnson and Cockrell were all transported to local hospitals for treatment:

| | Unit Num. | Prsn. Num. | Taken To | Taken By | Date of Death (MM/DD/YYYY) | Time of Death (24HR:MM) |
|---|---|---|---|---|---|---|
| DISPOSITION OF KILLED/INJURED | 4 | 2 | MEMORIAL HERMANN | HFD AMBULANCE 15 | | |
| | 4 | 3 | MEMORIAL HERMANN | HFD AMBULANCE 15 | | |
| | 4 | 4 | ST JOSEPH'S | HFD AMBULANCE 11 | | |
| | 4 | 5 | MEMORIAL HERMANN | HFD MEDIC 06 | | |
| | 4 | 6 | MEMORIAL HERMANN | HFD MEDIC 06 | | |

Law Enforcement and TxDOT Use ONLY. Form CR-3 (Rev. 1/1/2016) — Case ID 0102309019J — TxDOT Crash ID 17228344.1/2019388343 — Page 4 of 5

13.     Cockrell was treated at Memorial Herman Hospital for neck and back pain. He was diagnosed with an "acute" neck sprain and instructed to follow up with his doctor. Cockrell notified Defendant that he sustained an on-duty injury during the crash. Cockrell received medical treatment from Dr. Ryun Summers in Temple, Texas, who determined that as a result of the crash, Cockrell sustained a herniated thoracic disc. Dr. Summers determined that Cockrell's injuries prevented him from safely performing his job duties as a locomotive engineer. Dr. Summers completed Defendant's forms entitled "BNSF On Duty Injury Medical Status Form." On this form, which was completed and signed by Dr. Summers as Cockrell's medical treatment progressed, Dr. Summers identified Cockrell's diagnoses, the medication(s) prescribed to Cockrell, and placed work restrictions on Cockrell. The "BNSF On Duty Injury Medical Status Form" was then submitted to Defendant. After receiving these forms, Defendant approved of Cockrell's *on duty* injury medical leave of absence. Dr. Summers treated Cockrell with medication, physical therapy, and sent him for a surgical consult with Dr. Mounir Khalil at Baylor Scott & White in Temple, Texas. Dr. Khalil diagnosed Cockrell with "acute right-sided thoracic back pain" and a "work related injury," performed a set of epidural steroid injections on Cockrell's back, advised Cockrell to continue physical therapy, and told Cockrell that he would need a functional capacity evaluation (FCE).

4

14.     Cockrell followed up with Dr. Summers. Dr. Summers' treatment plan for Cockrell, which also involved the above steroid injections and rigorous physical therapy, included Cockrell performing strengthening exercises and a normal workout regimen at a gym until such time as Cockrell was able to return to work and safely perform his duties as a railroad engineer. Cockrell followed Dr. Summers' treatment plan and returned to the gym and performed strengthening exercises. It was no secret that Cockrell followed Dr. Summers' treatment plan in performing strengthening exercises at the gym. Indeed, at Cockrell's December 19, 2019 physical therapy session, the physical therapist documented that Cockrell had resumed lifting weights. The physical therapist medical record from December 19, 2019 also concurred with Dr. Summers' treatment plan, noting "instructed by PT to return to regular workout routine."

15.     During the course of Cockrell's recovery from his work injuries, Defendant assigned a new claims manager to Cockrell's file. That claims manager, Denise Poole, contends that she ordered surveillance on Cockrell because it appeared to her that Cockrell's medical restrictions seemed "excessive" based on the "relatively minor van accident" which injured Cockrell, Ware, Byers and Johnson. The surveillance ordered by Defendant's claims manager contained footage of Cockrell working out at the gym on January 20, 2020 as instructed by his doctors. Defendant's claims manager, who admittedly is not a doctor and acknowledged that she had no idea as to what the proper treatment protocol was for treating a herniated disc, reviewed the surveillance materials and concluded that Cockrell should have been able to work.

16.     Thereafter, on February 13, 2020, Defendant sent Cockrell a notice of investigation letter claiming Cockrell was dishonest about (1) "your need for leave and/or your ability to return to work full duty; and/or (2) the extent of any work-related physical limitations or restrictions."

17.     During the course of the formal investigation, Cockrell presented Defendant with a letter from Dr. Summers stating that he had instructed Cockrell in October 2019 to perform strengthening exercises at the gym. To quote Dr. Summers directly, which was attached as Exhibit T to the charade of a formal investigation conducted by Defendant:

> "The patient was instructed to return to the gym and do strengthening exercises after his injections, which was on 10/1/2019. Meaning, he can do normal work up regiment if he is able to work back up to it. This was approved by the specialist and myself. The patient did have a set back after the last visit here and I wanted him to see a specialist before releasing. Trent was having increase (sic) pain in the same area of complaint after lifting. These did improve over the next couple weeks. The patient continues to improve and is good to go back to work on 2/24/2020."

18.     Notwithstanding the clear, unambiguous and uncontroverted evidence that Cockrell was following the treatment plan of his physician and Defendant's actual knowledge of the same, BNSF terminated Cockrell's employment effective March 6, 2020.

## V. FRSA VIOLATIONS

19.     Cockrell would show that at all relevant times, he was an employee pursuant to 49 U.S.C. §20109 and 45 U.S.C. §20102.

20.     Cockrell would show that at all relevant times, Defendant was a railroad or railroad carrier pursuant to 49 U.S.C. §20109 and 45 U.S.C. §20102.

21.     The pertinent provision of the FRSA provides:

> (2)Discipline.—
> **A railroad carrier** or person covered under this section **may not discipline**, or threaten discipline to, an employee for requesting medical or first aid treatment, or **for following orders or a treatment plan of a treating physician**, except that a railroad carrier's refusal to permit an employee to return to work following medical treatment shall not be considered a violation of this section if the refusal is pursuant to Federal Railroad Administration medical standards for fitness of duty or, if there are no pertinent Federal Railroad Administration standards, a carrier's medical standards for fitness for duty. For purposes of this paragraph, the **term**

**"discipline" means to** bring charges against a person in a disciplinary proceeding, suspend, **terminate**, place on probation, or make note of reprimand on an employee's record.

49 U.S.C. §20109(c)(2)(emphasis added).

22.     It is undisputed that Cockrell received treatment from Dr. Ryun Summers for the injuries sustained in the August 9, 2019 on duty van collision. Dr. Summers is a "physician" for purposes of the FRSA, as Dr. Summers graduated from the University of North Texas Health Science Center College of Osteopathic Medicine in 2010 and specializes in Emergency Medicine. Dr. Summers is licensed to practice medicine in the State of Texas. His license is P1598.

23.     Dr. Summers determined Cockrell was unable to work and placed restrictions on him. Cockrell engaged, in good faith, in the protected activity of following the treatment plan of Dr. Summers by not returning to work until he was released by Dr. Summers to do so. Additionally, Cockrell engaged, in good faith, in the protected activity of following the treatment plan of Dr. Summers and Dr. Khalil by working out at a gym, as indicated in Dr. Summers' February 19, 2020 letter stating the same.

24.     Defendant had actual knowledge that Cockrell engaged in the protected activity of following the treatment plan and orders of his treating doctors. Cockrell is required by Defendant's safety rules to report an on-duty injury, which Cockrell did. Defendant's rules also require an injured employee who is unable to work to submit medical documentation to obtain a medical leave of absence. Defendant then reviews the medical documentation and can accept or reject the request for a medical leave of absence.

25.     Here, Cockrell advised Defendant that he was receiving medical treatment from Dr. Summers (and other doctors at Dr. Summers' clinic) and Dr. Khalil. Dr. Summers completed

Defendant's forms entitled "BNSF On Duty Injury Medical Status Form." On this form, which was completed and signed by Dr. Summers as Cockrell's medical treatment progressed, Dr. Summers identified Cockrell's diagnoses, the medication(s) prescribed to Cockrell, and placed work restrictions on Cockrell. The "BNSF On Duty Injury Medical Status Form" was then submitted to Defendant. After receiving these forms, Defendant approved of Cockrell's on duty injury medical leave of absence. Accordingly, Defendant knew that Dr. Summers had signed medical documentation that prevented Cockrell from returning to work as an engineer and placed physical restrictions on Cockrell. Defendant's trainmaster, James Erwin, gave testimony at the formal investigation conducted by Defendant which should have ended the inquiry:

> Q.      Do you think it is reasonable for Mr. Cockrell to follow his doctor's advice as to whether and when he can safely perform his job duties as a railroad engineer?
> A.      Yes.
> . . .
> Q.      In fairness, BNSF is claiming that Mr. Cockrell is being dishonest about his need for work restrictions when Mr. Cockrell's doctors are the ones who determine the physical restrictions, is that correct?
> A.      I mean, yes, his doctors do determine his ability to work or not to work. That's correct.

Investigation Transcript P. 64, L. 20-23.

Notwithstanding this direct and damning testimony, Defendant concluded the formal investigation and fired Cockrell in violation of the FRSA contending that he (and not his doctors) was dishonest in the work restrictions that were placed upon him by Dr. Summers.

26.      Defendant also had actual knowledge that Dr. Summers' treatment plan for Cockrell included Cockrell working out at the gym and performing strengthening exercises. During the formal investigation held by Defendant, Cockrell submitted a copy of Dr. Summers February 19, 2020 letter to Defendant and questioned Defendant's witnesses regarding the same.

James Erwin, a BNSF trainmaster, admitted that he was not a medical doctor, admitted that he did not know the appropriate medical treatment plan for a herniated disc, admitted that it was reasonable for Cockrell to rely upon his actual doctor for medical advice and testified as follows:

> Q.     Mr. Erwin, do you take any issue whatsoever with Mr. Cockrell following the advice of Dr. Summers and a back specialist?
> A.     I wouldn't take exception to anyone following treatment plan outlined by their physician.
> Q.     So, in fact, you would agree that Mr. Cockrell should follow what Dr. Summers and the back specialist told him to do?
> A.     Yes.
> Q.     If they told him to go to the gym to gain strength, that's what he should have done, would that be a fair statement?
> A.     If that's what was outlined in their care plan.
>
> Investigation Transcript P. 78, L. 6-8.

27.     Following Defendant's kangaroo court they call a formal investigation, and despite having actual knowledge that Cockrell had engaged in protected activity in good faith, Defendant terminated Cockrell, which constitutes an unfavorable employment action. 49 U.S.C. §20109. *Graves v. Burlington Northern & Santa Fe Ry. Co.*, 77 F.Supp.2d 1215, 1218 (E.D. Ok. 1999)(discussing that railroad's formal investigation was conducted by railroad as opposed to an impartial fact finder, did not follow any rules of evidence, and plaintiff was not entitled to legal representation).

28.     The undisputed facts in this case are that Dr. Summers determined in his professional medical opinion that Cockrell was not able to safely perform his job duties as a locomotive engineer from the date of the crash to February 24, 2020. Dr. Summers determined, based on his medical training and experience, the physical restrictions and limitations that he placed on Cockrell. Dr. Summers determined, in his professional medical opinion, that after Cockrell received an epidural steroid injection, Cockrell should return to the gym and do

9

strengthening exercises. Cockrell did not determine the treatment plan, he just followed it. Despite doing precisely what the law tells Cockrell he can do, Defendant fired him.

29.     It is difficult to imagine a more textbook violation of the literal and unambiguous terms of a federal statute. Plaintiff followed the treatment plan of a treating physician for an on-duty injury and did so in good faith. Defendant had actual knowledge that Plaintiff followed the treatment plan of a treating physician in good faith. Notwithstanding actual knowledge of Plaintiff's protected activity, Defendant, who is a rail carrier engaged in interstate commerce, retaliated against Plaintiff for engaging in protected activity by terminating him in direct violation of the FRSA.

## VI. DAMAGES

30.     Plaintiff engaged in statutorily protected activity and Defendant terminated his employment in violation of the FRSA, which caused, in whole or in part, Plaintiff to sustain recoverable damages.

31.     Plaintiff seeks all damages permissible under the FRSA including past and future monetary damages for:

a.     lost wages, pay and benefits;

b.     lost benefits, including health insurance for Plaintiff and Plaintiff's young children;

c.     lost months of credit toward Plaintiff's retirement;

d.     lost payments to the Railroad Retirement Board for Plaintiff's retirement;

e.     credit card interest and late fees;

f.     out of pocket medical expenses;

g.     mental anguish and emotional distress;

h.      litigation costs;

i.      expert fees; and

j.      attorney's fees and expenses.

## VII. RELIEF REQUESTED

32.     As a result of Defendant's FRSA violations, Plaintiff demands a Judgment under the FRSA for all relief necessary to make him whole, including monetary damages for the damages set forth in paragraphs 30 and 31.

33.     As a result of Defendant's acts and omissions alleged herein in violation of the FRSA, Plaintiff was illegally terminated and seeks reinstatement with the same seniority status that he would have had but for Defendant's violation of the FRSA.

34.     Defendant's violations of the FRSA were done with malice and indifference to Plaintiff's federally protected rights, and were intentional, outrageous and egregious, and warrant the statutory maximum of punitive damages to punish Defendant and deter other employers from like conduct.

35.     As a result of Defendant's violations of the FRSA, Plaintiff seeks a ruling completely clearing and removing any reference to Plaintiff's alleged violation of Rule 1.6 from Plaintiff's personnel record. 49 U.S.C. § 20109(e).

36.     Plaintiff demands a trial by jury.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be summoned to appear and answer, and that upon final trial Plaintiff have:

a.   Judgment against Defendant;

b.   Pre judgment and post judgment interest;

c.   Costs of litigation, including expert fees and litigation costs;

d.   Attorney's fees; and

e.   Such other and further relief at law or in equity to which Plaintiff is justly
     entitled.


Respectfully submitted,

THE TODD LAW GROUP, PLLC


/s/ *Jeffrey N. Todd*
Jeffrey N. Todd
State Bar No. 24028048
Federal ID No. 1308
jeff@jeffftoddlaw.com
12929 Gulf Freeway, Suite 301
Houston, Texas 77034
Telephone:     (832) 243-4953
Facsimile:     (713) 583-7818

MARTINEZ & MCGUIRE PLLC
Clint E. McGuire
State Bar No. 24013139
Federal ID No. 25560
clint@mmtriallawyers.com
17227 Mercury Drive, Suite B
Houston, Texas 77058
Telephone:     (281) 286-9100
Facsimile:     (281) 286-9105
*Motion for Non-Resident Attorney Forthcoming*

GROVES POWERS, LLC
Steven L. Groves, #40837
sgroves@grovespowers.com
One U.S. Bank Plaza
505 N. 7th St., Ste. 2010
St. Louis, MO 63101
Telephone:     (314) 696-2300
Facsimile:     (314) 696-2304
*Motion for Non-Resident Attorney Forthcoming*
ATTORNEYS FOR PLAINTIFF

12